AMF, INC., APPELLEE, *v.* MRAVEC ET AL., APPELLANTS.

(No. 43024—Decided May 14, 1981.)

*Mr. David R. Mayo,* for appellee.
*Mr. George W. Joseph, Jr.,* for appellants.

JACKSON, C.J. The appellee, a corporation which sells bowling equipment, brought this action on an account against the appellants. The trial court entered judgment for the appellee in the sum of $4,467.08, plus interest. The appellants appeal, citing four assignments of error.

The appellee, to prove its case of breach of contract, called only one witness to the stand: Sally Stein, the accounts receivable supervisor for AMF, Inc. She testified that she was responsible for keeping records and reconciling the balances each month for all accounts of appellee company. She admitted that she had no personal knowledge of the transactions between the parties. Specifically, she admitted that she did not know whether the balance of the appellants' account was at zero before 1971, whether the appellants had ever asked for an account, whether the appellants requested that all transactions be conducted on a cash basis, and whether merchandise was sent to the appellants that did not belong to them.

Appellee used the witness' testimony to lay the foundation for the introduction of three documents into evidence: (1) Exhibit A is a computer printout entitled "Composite Aging Report"; listed on the printout are a number of charges to the appellants. The witness testified as follows regarding the manner in which the computer printout information was obtained:

"Originally a shipping order is created. It can be created in West Fair or by salesmen in the field. The shipping order is then processed through our electronic data processing. The order is shipped and an invoice is created by the computer. We identify all of our customers by number. Each customer has a specific customer number. That invoice is then sent back to the billing department, verified and mailed out through our mail room.

"At that point, all the actual open account invoices which belong in the accounts receivable system are processed into my system weekly. Then the other section actually would be the cash which is also, when it comes in coded with the customer's number, applied directly to his account. At that point, we apply a check to specific invoices."

The witness stated that when payment is received and applied against an invoice, the record of the invoice is deleted from the "Composite Aging Report." In effect, the "Composite Aging Report" is merely a record of invoices for which payment has not been received. The witness testified that the eleven unpaid invoices totaled $4,467.08; in fact, simple addition yields the sum of $4,424.26. Neither party asked the witness to explain this discrepancy. The witness did state that the "Composite Aging Report" was kept under her supervision and control.

(2) Exhibit B is a set of nine invoices, which correspond to nine of the entries on the "Composite Aging Report." The

witness testified that two or three of the invoices had been destroyed, either deliberately or because of a fire in the warehouse. The witness implied, but did not state, that these invoices were kept under her supervision and control. The amounts shown on the nine invoices total $4,018.26. With few exceptions, it is not apparent from the invoices what goods were shipped to the appellants, since most of the entries on the invoices consist of abbreviations and codes.

(3) Exhibit C, the third document identified by appellee's witness, is a two-page handwritten summary, listing payments made by the appellants since February 1971, and listing the invoices to which the payments were applied. The summary was prepared by the witness, and the appellants did not object to the introduction of the document into evidence. None of the invoices listed in Exhibit C as having been paid was listed in Exhibit A, the "Composite Aging Report," nor were the paid invoices offered into evidence.

*First Assignment of Error*

"The court erred by admitting into evidence a 'Composite Age Report' as an account."

For its first assignment of error the appellants assert that the trial court erred in admitting the "Composite Aging Report" into evidence, on the ground that since the report did not contain a record of all the transactions between the parties, the report did not constitute an "account." The appellants are correct in their contention that Exhibit A is not an "account." An "account" is defined as follows:

" 'An account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary show-ing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.' "*American Security Service* v. *Baumann* (1972), 32 Ohio App. 2d 237, 239 [61 O.O.2d 256].

The appellants misconceive, however, the role of an "account." An account is merely a pleading device used to consolidate several different claims one party has against another; an action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid. *Dykeman* v. *Johnson* (1910), 83 Ohio St. 126. In an action on an account, the "account" must be attached to the complaint. Civ. R. 10(B). The account need not be admissible at trial, nor must the plaintiff introduce any documentary proof into evidence to prove breach of contract; the plaintiff may establish a prima facie case through oral testimony. *American Security Service* v. *Baumann, supra.* Where the defendant enters a general denial to the allegations of the complaint, the plaintiff must prove all the elements of a cause of action for breach of contract. *Dykeman* v. *Johnson, supra; American Security Service* v. *Baumann, supra.*

Exhibit A, the "Composite Aging Report," is not an account because it does not at least summarize all of the transactions between the parties. The exhibit is not inadmissible at trial for that reason. Exhibit A is relevant and material because it tends to prove some of the elements of the claim of the appellee.

The appellants also argue that Exhibit A does not qualify as a business record (and is, therefore, inadmissible under the hearsay rule), because it was not made in the normal course of business, it was not compiled at or about the time of the events that it records, and because the persons who entered the information on the computer were not called to testify that they had personal knowledge of the transactions. Only the last of these three arguments was raised

in the lower court.[1] We decline to discuss the merits of the first two arguments, because neither the trial court nor opposing counsel was apprised that the appellants objected to the introduction of Exhibit A on those grounds. A party may not assert a new legal theory for the first time before the appellate court. *Kalish* v. *Trans World Airlines* (1977), 50 Ohio St. 2d 73 [4 O.O.3d 195]; *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]; *Moats* v. *Metropolitan Bank of Lima* (1974), 40 Ohio St. 2d 47 [69 O.O.2d 323]. Where a party makes a specific objection to the introduction of evidence, the party is considered to have waived all other grounds for excluding the evidence. *Johnson* v. *English* (1966), 5 Ohio App. 2d 109 [34 O.O.2d 229].

We note that the admissibility of Exhibit A was not resolved at the hearing where evidence was taken. The hearing was had before a referee, who reserved ruling on the issue of the admissibility of Exhibits A and B. The referee died before issuing a recommendation to the court. The court did not enter judgment until September 1980. Since the Ohio Rules of Evidence went into effect on July 1, 1980,[2] the trial court had the option of applying the statutory business records exception (R.C. 2317.40) or the new evidence rule governing the business records exception to the hearsay rule (Evid. R. 803[6]). The court apparently applied the statutory rule.[3] We find that under either R.C. 2317.40 or Evid. R. 803(6), the custodian of the business record is the only witness who must be called in order to lay a foundation for the introduction of the business record. The statute and the rule provide:

"As used in this section 'business' includes every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

"*A record of an act*, condition, or event, in so far as relevant, *is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation,* and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.

"This section shall be so interpreted and construed as to effectuate its general purpose to make the law of this state uniform with those states which enact similar legislation." R.C. 2317.40. (Emphasis added.)

"A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian* or other qualified witness

---

[1] The appellants made a general objection to the introduction of Exhibit A during the hearing before the referee; in its "Answer Brief" to the court, however, the appellants argued only that Exhibit A did not constitute an account and that the persons who entered the data should have been called to testify.

[2] Evid. R. 1102(A) provides:

"These rules shall take effect on the first day of July, 1980. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event former evidentiary principles apply."

[3] The court found Exhibit A admissible under R.C. 2317.03, the dead man's statute. The correct statutory citation is 2317.40, the business records exception.

or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." Evid. R. 803(6). (Emphasis added.)

Ms. Stein testified that she was the custodian of Exhibit A; she was therefore qualified to testify as to the identity of the document, and the manner in which the document was prepared. The appellants' first assigned error is without merit.

*Second Assignment of Error*

"The court erred by admitting into evidence invoices of transactions between the parties."

For their second assigned error, the appellants contend that Exhibits B-1 to B-9, the invoices, are not admissible under *C. E. Riley Co.* v. *Levy Overall Mfg. Co.* (1919), 10 Ohio App. 261, in which it was held, at page 264, that invoices are not evidence of sales. The *Riley* case was decided before the enactment in 1939 of the business records exception (G.C. 12102-22, 12102-23 and 12102-24, later codified as R.C. 2317.40). Where, in a trial held before the effective date of the rules of evidence, invoices were properly identified and authenticated under the statutory business records exception, we perceive no reason why the invoices should not be received into evidence.

This court is cognizant of a conflicting decision rendered by another court of appeals. In *Brown* v. *Columbus Stamping & Mfg. Co.* (1967), 9. Ohio App. 2d 123 [38 O.O.2d 143], the court held that invoices are not admissible because of the varying purposes for which invoices are used:

"* * * Varying uses of invoices make them unsatisfactory as evidence. For example, they are frequently only memoranda used to advise of a sale on consignment, a note to an insurance company to secure coverage on a shipment of mer-chandise, a shipping notice, or other quasi-accounting uses, none of which supports the implications of the short form pleading or the reliability and significance of a book of original entry." *Brown* at 127.

We are, however, persuaded that invoices are admissible into evidence if they qualify as business records under the applicable law of evidence. The relevance of the invoice (*i.e.,* what the invoice proves) is dependent upon the business use of the invoice. Where, as in the case at bar, the invoices are prepared by an account department from shipping orders, before the goods are shipped, and it is not shown that the invoices were used by the shipping department in any manner, the invoices constitute evidence that goods were ordered, but do not necessarily constitute evidence that the goods were shipped.

We are persuaded that the trial court did not err in admitting the invoices, Exhibits B-1 to B-9, into evidence. The appellants' second assigned error is without merit.

*Third Assignment of Error*

"The court erred in not granting defendants' motion for a direct[ed] verdict after the close of plaintiff's case."

In the third assignment of error the appellants contend that the trial court erred in failing to grant them a directed verdict. The record discloses that the appellants moved for a directed verdict solely on the ground that the appellee failed to prove an "account." As observed by this court in the discussion of the first assignment of error, the "account" is pertinent only for purposes of pleading; at trial, the plaintiff may choose to prove its claim of breach of contract through oral testimony. *American Security Service* v. *Baumann, supra,* (32 Ohio App. 2d 237 [61 O.O.2d 256]). Since the appellants were not entitled to a directed verdict on the ground stated, the trial court did not err in overruling their motion.

*Fourth Assignment of Error*

"The court erred by ruling against the manifest weight of the evidence."

For their fourth assigned error, the appellants claim that the verdict of the trial court in favor of the appellee is against the manifest weight of the evidence. We agree. The appellee had the burden of proving, by a preponderance of the evidence, the existence of a contract for the sale of goods, the delivery of the goods, and the failure of the appellants to pay for the goods. The exhibits offered by the appellee tended to prove that an ongoing contract for the sale of goods existed between the parties, and that the appellants had failed to pay for certain equipment. The appellee failed to adduce evidence which would prove, by a preponderance, that the goods in question were delivered to the appellants. The only evidence of delivery was nine invoices (Exhibits B-1 to B-9) which were prepared from shipping orders before the goods were shipped. The evidence did not demonstrate orders were prepared for shipment from the invoices, nor was it shown that these nine invoices were sent to the appellants. The appellants testified that items were often sent to them that had been ordered by another business, that they often returned merchandise which was mistakenly sent to them, and that they had tried, without success, to obtain information from AMF, Inc., regarding the specific items that had been delivered but not paid for. In view of the fact that the appellants did not admit that the goods in question were delivered and retained by them, the appellee had the burden of affirmatively proving the fact of delivery by a preponderance of the evidence. After a careful review of the entire record, we are convinced that this burden was not met, and that the verdict of the trial court is against the manifest weight of the evidence. See *State, ex rel. Squire,* v. *Cleveland* (1948), 150 Ohio St. 303 [35 O.O. 448]. The appellants' fourth assigned error is well taken.

Accordingly, the judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

*Judgment reversed and case remanded.*

PRYATEL and PARRINO, JJ., concur.