DECISION.
The plaintiff-appellant, Staffing America, appeals from the judgment of the trial court awarding the defendant-appellee, Titan Distribution Services, Inc., $12,898 on its counterclaim in an action arising out of a dispute between the companies over unpaid invoices and damage committed by temporary employees while in the service of Titan. In its two assignments of error, Staffing America argues that (1) the trial court erred in rejecting its proof of damages, and (2) the court's award of damages to Titan was contrary to the manifest weight of the evidence. For the reasons that follow, we affirm in part and reverse in part.
 FACTS
Staffing America is a temporary staffing company that supplies light-industrial skilled laborers to companies. Karen Stewart, an account executive at Staffing America, testified that she had provided temporary staffing to Titan for a "good year or better," when Robert Martin, a Titan supervisor, asked that Titan be supplied with forklift operators. She testified that Martin specifically asked for licensed, skilled forklift operators. The forklift operators were needed by Titan to move corrugated carton pallets from one area in a warehouse to another. Titan was performing the project for a third company, Jefferson Smurfit Middletown. Titan was to be paid approximately $15,000 for moving approximately 6,000 pallets over a period of two to three weeks.
Martin testified that he was the supervisor of the project for Titan. He described the pallets as fragile, requiring care by the forklift operators not to "stab" them. He stated that, once the forklift operators were brought onto the project, "[w]e made sure that they were trained on our type of equipment, like, they knew where the brakes were, gas, how to lift and operate the truck." According to Martin, the operators were given an overview of the project, observed for "a couple of hours," instructed on "what to do as far as moving product from one area to another," and then left on their own to do the job. On cross-examination, Martin answered the following questions:
 Q. And you were the one that told them that you needed to exactly how to bring things from point A to point B?
A. Yes.
Q. You were the one supervising that job?
A. Yes.
 Q. You were the one who provided employees with direction as to the manner how to do this?
A. I am the person who instructed them, yes.
Q. Who determines the quality of the work?
A. I guess myself.
 Q. Who provided any type of instructions, such as, there's a sharp corner to get around the top part of the warehouse, who provided them with specific instructions on those items?
A. I did.
Stewart came to the job site two to three times a week for a period of fifteen to forty-five minutes. Martin testified that he would bring to her his complaints concerning certain operators, and that many times Stewart would terminate the operators on the spot. He testified that he also had the right to terminate the forklift operators that he considered were unqualified, and that he exercised this right.
Martin testified that he observed that some operators were causing damage, and that he regularly reported this to Stewart, demonstrating to her the type of damage that was being done. The type of damage he showed to Stewart was, according to Martin, the result of forks running through or smashing boxes, pallets falling over, and pallets being mishandled and rubbed together, tearing the cartons.
According to Martin, after being shown an example of the damage, Stewart told him that Staffing America "would take care of it" and "that's what we have insurance for." He testified that he interpreted this as a promise that Titan would be reimbursed for the damage, although he also testified that Stewart never actually used the word "promise" with him. He testified that he assumed that Stewart had the authority to bind Staffing America to a promise to reimburse Titan for the damage to the pallets. Martin testified that he did not end the relationship between Titan and Staffing America on the project because it was his "feeling" that Staffing America would "make good on the damage claims." According to Martin, had Stewart not assured him that Titan would be reimbursed for the damage, he would have terminated Staffing America's involvement with the project immediately.
Martin testified that after completion of the project additional "hidden damage" was discovered. He testified that Jefferson Smurfit later presented Titan an invoice for $12,898 to cover the cost of the damaged pallets. Titan paid the invoice. Martin testified that he then presented the invoice and supporting documentation to Staffing America and never received a response. Conversely, Stewart and Robert Nadler, the head of Staffing America, testified that Titan never paid the company its invoices for supplying the forklift operators.
 STAFFING AMERICA'S CLAIMS
In its first assignment of error, Staffing America argues that the trial court's failure to find for the company on its claims for an unpaid account and unjust enrichment was "contrary to law, against the weight of the evidence, and an abuse of discretion."
As has been observed, an action on an account is a pleading device to consolidate several different breach-of-contract claims that one party has against another. AMF, Inc. v. Mravec (1981),2 Ohio App.3d 29, 31, 440 N.E.2d 600, 603. As a pleading requirement, Civ.R. 10(B) stipulates that the "account" must be attached to the complaint. The "account," however, need not be established by documentation — indeed, the documentation attached to the complaint need not be admitted at trial; rather, the account may be proven through oral testimony. American Security Servicev. Baumann (1972), 32 Ohio App.2d 237, 243, 289 N.E.2d 373, 378. Where the defendant responds with a general denial, as did Titan here, it is incumbent on the plaintiff to prove all the elements of a cause of action for breach of contract. Id.
The trial court rejected all of Staffing America's claims, initially because it found inadequate proof of any specific amount of damages. The trial court noted that the company had attached the wrong invoice to the complaint and prayed for an amount that was clearly erroneous (the figure was, in fact, the amount of damage allegedly sustained by Titan in its counterclaim). To rectify this, Staffing America supplied additional exhibits. The trial court found these exhibits unhelpful, however. As the court noted, the complaint sought a clearly erroneous figure ($6, 956.30); Stewart testified to the same clearly erroneous figure ($6,956.30); the head of Staffing America testified to a different figure ($7,121.45); and Staffing America's documentary exhibits established a third figure ($6,718.34). Rejecting all of these figures, the court stated, "The Court may not speculate as to Staffing America's damages. The Court is unsure as to the amount of damages being sought by Staffing America."
Although it is generally said that damages in contract actions must be certain, absolute certainty is not required; rather, "reasonable certainty" will suffice. Calamari Perillo, The Law of Contracts (2 Ed. 1977), Section 14-8, at 528. As this court has noted,
 The requirement of reasonable certainty does not mean that the plaintiff can recover nothing unless he establishes the total amount of his harm; nor does it mean that he cannot get damages unless he proves the exact amount of his harm. The requirement merely excludes those elements of harm that cannot be evaluated with a reasonable degree of certainty.
 Holle v. Kennamer (Mar. 19, 1980), Warren App. No. 318, unreported, quoting Restatement of the Law, Contracts (1932), Section 331. In sum, "[i]t is the uncertainty as to the existence of damages * * *, and not uncertainty to their amount, which precludes recovery." Accurate Die Casting Co. v. Cleveland (1981), 2 Ohio App.3d 386, 391, 442 N.E.2d 459, 464. Even if the plaintiff cannot prove the amount of damages with sufficient certainty for relief on the contract, such failure does not preclude alternative relief under a theory of restitution or unjust enrichment. See Dobbs, Handbook on the Law of Remedies (1973), Section 3.3, at 150-151.
We hold that the trial court, by rejecting Staffing America's case in its entirety because of the differing amounts of damages, applied a standard of absolute certainty rather than a standard of reasonable certainty. The original figure in the complaint (or adopted by Stewart) was clearly erroneous and should have been eliminated. Between the remaining two figures, $7,121.45 and $6,718.34, there existed a discrepancy of a little over $400. Such a discrepancy, in our view, did not justify a complete rejection of Staffing America's claims under a standard of reasonable certainty. But this does not necessarily mean that the failure to award any damages ultimately amounted to reversible error.
The trial court also rejected Staffing America's claims because the final seven invoices that the company claimed were due and owing were for the weeks of November 24, 1996, through January 5, 1997. The forklift project, however, was completed by mid-October of 1996. The trial court found evidence that Staffing America invoiced its clients two or three days after the close of its employees' work week. Consequently, the court concluded that "Staffing America failed to offer any evidence that it provided goods, materials and/or services to Titan during the weeks of November 24, 1996, through January 5, 1997, for which Titan owed them payment."
Unlike its earlier finding concerning the amount of damages, the court found that Staffing America had failed to prove any amount of damages during the period for which it was seeking compensation. In other words, the court found that Staffing America had failed to show not only the amount of damages, but also the fact that such damages existed. Reviewing the record, we cannot say that the trial court lost its way in making such a determination. The evidence at trial was vague and poorly presented with respect to the work that was invoiced, the time periods involved, and what portion Titan paid. The court could reasonably have inferred from the invoices that they were attributable to a period of time after the project was completed. Although Staffing America argues that Titan "did not dispute that this money was owed," we cannot find anywhere in the record where Titan admitted that it owed the money for which it was invoiced. As Titan points out, it instead interposed a general denial to the allegations in the complaint.
As noted previously, it was Staffing America's burden to establish all the elements of a breach-of-contract claim, including the existence of damages. We hold that the trial court neither lost its way nor committed a manifest miscarriage of justice in ultimately finding that it had failed in this burden. Staffing America's failure of proof, in this regard, also precluded an award of damages for unjust enrichment.
Finally, it should be noted that Staffing America also argues that it was entitled to attorney fees based upon language in the customer agreement appearing on the back of the time cards it supplied for its workers. The trial court rejected this argument, finding that Titan had never assented to the language on the time cards, which served to modify the original agreement between the parties, and that, in any case, Staffing America did not provide any additional consideration for the new contract terms. We agree with the court's analysis and thus affirm this finding.
Accordingly, Staffing America's first assignment of error is overruled.
 THE COUNTERCLAIM
In its second assignment of error, Staffing America challenges the trial court's award of damages to Titan on its counterclaim. Specifically, Staffing America challenges the trial court's finding that it was responsible for the damage caused by the forklift operators under the doctrine of respondeat superior. We agree.
Where, as here, an employee is loaned to another employer, the application of respondeat superior depends upon which employer retains the right to control the manner and means of performance.Daniels v. McGregor (1965), 2 Ohio St.2d 89, 92-93,206 N.E.2d 554, 555-556. Titan, in this regard, argues that, although describing himself as supervisor for the project, Martin did not "supervise, direct, or control the day-to-day activities of the Staffing America employees" but, rather, "merely provided these employees with an overview of the projects." This characterization of Martin's role, however, is directly contrary to his own testimony. Martin testified that he instructed the forklift operators on the work to be done, told them how to move items from point A to point B, inspected their work for damage, and possessed the authority to — and, in fact, did — fire those forklift operators whose work he found unsatisfactory. Short of driving the forklifts himself, Martin was clearly the on-site person controlling the manner and means of the forklift operators' performance.
It should be noted, finally, that Titan's counterclaim included a claim for breach of contract based upon the representations Stewart allegedly made to Martin that Staffing America would "take care" of any damages done by the forklift operators. The trial court did not make any findings with respect to this claim. As Titan has not cross-appealed, the merits of this claim are not before us.
Staffing America's second assignment of error is, therefore, well taken. Accordingly, we affirm the judgment of the trial judgment rejecting Staffing America's claims due to its failure to prove damages; however, we reverse that part of the judgment finding for Titan on its counterclaim and enter final judgment for Staffing America on the counterclaim.
Judgment accordingly.
 GORMAN, P.J., PAINTER and WINKLER, JJ.