DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which entered judgment in favor of Advanced Conveyer Systems 
Fabrication, Inc. ("Advanced Conveyor") on their breach of contract and breach of written guarantee and warranty claims. Because we find that no evidence supporting these claims was offered at trial, we reverse.
In November 1998, appellee, Advanced Conveyer received a purchase order from Norplas Industries ("Norplas") for the fabrication of a conveyor system to be used in the assembly of front and rear automobile bumpers for the Cadillac Denali, a large sport utility vehicle. The assembly of the bumpers was a short term project for Norplas ending on July 31, 2000.
The requested conveyor system included a turntable and two hydraulically operated "manipulators" mounted to a manually operated overhead rail or trolley. In this case, the purpose of the manipulators was to provide assistance to the workers in lifting the front and rear bumper assemblies to, and the finished product from, the conveyor system. The parts to be lifted weighed fifty-five to seventy-five pounds. The first manipulator was to lift a steel part that was to be inserted in plastic bumpers conveyed to the turntable. After assembly was completed, the second manipulator was to lift the finished product and put it on a shipping rack.
Advanced Conveyor contacted appellant, Techni-Kal Systems, Inc. ("Techni-Kal"), a manufacturer's representative for appellant, J J Manufacturing, Inc. ("J J"), a corporation that designs and makes industrial manipulators. On December 3, 1998, Techni-Kal and J J submitted a proposal which subsequently formed the basis of the contract between the parties, agreeing to design and fabricate custom manipulators according to specifications provided by the purchaser, Advanced Conveyor.
The proposal contains a "GUARANTEE AND WARRANTY" that provides:
 "J J Manufacturing [sic] Strongarm Division, will guarantee the successful operation of each manipulator under the following conditions:
 "1. Samples of the product handled are provided to our plant for testing. (All sample products shipped to and from our plant will be at customer's expense).
"2. Full disclosure of operation is provided.
 "3. Communication with our engineering and/or research and development departments are open.
"4. Agreed upon payment terms are met.
"5. Normal wear and tear is excluded.
 "6. Installation is in accordance with J J's standards.
 "7. Cycle rates are not covered because they are dependent on operator dexterity."
 "8. Within the first six months from the date of shipment, if the equipment does not conform to the specifications outlined by this proposal along with samples provided,
 J J will repair, replace or buy back the unit at no charge to the customer. J J will not be responsible for installation cost or labor charges."
Included in the specifications is a requirement that the purchaser supply the hydraulics to operate the manipulators and that one hundred psi of air pressure is "constantly" needed to operate the same. Under the heading "Equipment Performance" the proposal states:
 "Each proposal is written on a per application basis as J J understands them. The buyer assumes full responsibility to verify that the proposed solution satisfies his requirements. No representative of J J Manufacturing is authorized to imply or guarantee any performance or results beyond the limits expressed in this proposal."
Finally, the proposal makes the buyer responsible for the installation of the manipulators, including the air supply.
Five days after the December 3 proposal, Advanced Conveyor sent J J a purchase order for the two manipulators. The purchase order was specifically based on the proposal. The cost of the manipulators is listed as $40,149.75. Thereafter, Advanced Conveyor sent Norplas a fax detailing the specifications, e.g., height, movements, of the two manipulators.
In late December, J J began submitting proposed designs of the manipulators, or parts thereof, to Advanced Conveyor for its approval. It is undisputed that Advanced Conveyor either approved the designs or made their own changes to the designs. In February, Advanced Conveyor issued a purchase order to J J for extensions to the manipulators, for air supply amplifiers and for another attachment. The total cost of these items was $4,041.75. Revisions to the concept drawings of the project, as made by Advanced Conveyor, continued throughout that month and were incorporated by J J. In late February, Advanced Conveyor approved the design concept drawings, and the manipulators were manufactured.
The original delivery date for the manipulators was February 2, 1999. They were actually delivered to the Norplas plant on March 12, 1999. Advanced Conveyor installed the system. It was discovered that the grippers on the manipulators would not pick up the parts and that the manipulators were "sluggish" and hard to move; however, the air pressure of the hydraulics operating the system was only fifty to sixty psi. There were also concerns regarding range of motion and interference with an overhead structure fabricated by Advanced Conveyor. It was eventually decided to return the manipulators to J J for further revisions.
On April 16, 1999, the manipulators were returned to J J to rectify difficulties in their operation. Certain part samples and, for the first time, rear bumper racks were sent along with the returned materials. J 
J refused to perform any modifications on the manipulators unless and until the monies owed them for their product was paid in full. Advanced Conveyor paid the remainder of the monies owed on a total price of over $58,000.
Based upon revisions and specifications provided by Advanced Conveyor, J J commenced modification of the manipulators. On June 16, 1999, Norplas canceled that portion of the conveyor system involving the manipulators, asserting that they were "built incorrectly and were not functional based on original design intent." Advanced Conveyor, however, negotiated with Norplas who agreed to allow re-installation of the manipulators.
On August 10, 1999, Robert J. Knapik, President of Advanced Conveyor, sent a fax to the Engineering Manager of Norplas in which he stated that the "prototype [of the manipulators] underwent many changes from the initial specifications." In discussing the delay in completion of the project, Knapik acknowledged that the cause was the many changes made to the manipulators by Norplas and Advanced Conveyor.
On September 7, 1999, the manipulators were re-installed at Norplas. Dennis Harrigan, who was project manager for Advanced Conveyor on this particular project, tested the manipulators on-site. He asserted that they were not "ergonomically engineered" for ease of operation. Specifically, he claimed that they were hard to manipulate and there were problems with the range of motion. A site visit report, dated September 21, 1999, lists the following remarks made by Advanced Conveyor personnel regarding the manipulators: (1) "Tracking On I-Beam Not Fluid" (2) Articulation At Joints Difficult;" (3) "Mechanical Installation Appears Correct;" (4) Problem Appears To Be Design/Application Related" in that "Reach Appears Too Long (Both)," "Raw Goods Manipulator Would Be better If It Rotated Down," and "Finished Goods Manipulator Is `Bulky' Due To Revised Functionality." Slow cycle times, that is, the time it took for that part of the process involving the manipulators, was also mentioned.
Robert Knapik testified that, as designed, the manipulators were very difficult to operate, requiring several different movements by the operator, and were time-consuming. He, nonetheless, was unable to point to any specification for the manipulators that was not met (with the exception of the grippers failing to pick up front bumpers after the first installation) by J J.
On October 18, 1999, Norplas informed Advanced Conveyor that it was rejecting the manipulators "in that they failed to meet the specifications, requirements, and application of the Norplas project." According to Steven R. Bronikowski, program manager for the project at Norplas, his corporation's contract for the design and manufacture of the manipulators was with Advanced Conveyor, not J J. He testified that even though the manipulators could "functionally pick up the product and orient it correctly," they were "cumbersome." He also noted that the cycle time (of approximately thirty-eight seconds) was not "achievable." However, as late as November 22, 1999, Norplas informed Advanced Conveyor that it must commit to a "fixed time line for the retrofits required to upgrade this piece of equipment [the manipulator portion of the conveyor system] to its original design intent and commit to a final financial balance owing should they [Advanced Conveyor] fail to achieve the desired performance * * *."
On October 18, 1999, Advanced Conveyor commenced the instant action against J J and Techni-Kal, pleading breach of contract and, in the alternative, breach of the written warranty. The legal theories of breach of an implied warranty of fitness for a particular purpose and of merchantability were not raised in the pleadings.
After a trial to the bench, the common pleas court entered judgment in favor of Advanced Conveyor. In Finding of Fact No. 13, the trial judge determined that the manipulators were not "ergonomically engineered making it difficult for the Norplas work force" to use them and that due to this, Norplas refused to pay for the manipulators. The trial court concluded that J $ J and Techni-Kal breached their contract with Advanced Conveyor because "the manipulators did not conform to the specifications and application of Norplas, Inc." The court further held that "Defendants breached its [sic] Guarantee and Warranty" and awarded Advanced Conveyor $65,358.33 plus interest and court costs.
In their appeal of this judgment, appellants set forth the following assignment of error:
 "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW IN ITS INTERPRETATION OF THE PARTIES WRITTEN CONTRACT AND THE EXPRESS GUARANTEE AND WARRANTEE ISSUED BY APPELLANT TO APPELLEE PURSUANT TO SAID CONTRACT."
The parties to this appeal extensively argue the appropriate standard of review applicable in this instance. Both apparently assume that the single question is whether the trial court misinterpreted the written contract and guarantee/warranty provisions of that contract. Appellants' contentions are, however, twofold. First, appellants contend that in making Finding of Fact No. 13, the trial court misinterpreted the contract between appellants and Advanced Conveyor. Second, appellants argue, in essence, that the trial court's conclusions of law as to any breach of the contract, including a breach of the "Guarantee and Warranty," are against the manifest weight of the evidence.
A court must interpret a contract so as to carry out the intent of the parties. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. Shifran v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635. Courts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties' contract.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246 and paragraph two of the syllabus. Accordingly, interpretation of clear and unambiguous contract terms is a matter of law and our standard of review is de novo. Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108.
In the present case, the contract between Advanced Conveyor and appellants is plain and unambiguous in that J J agrees to design and fabricate custom manipulators based on specifications provided in the contract and conditioned on the fact that Advanced Conveyor disclose the full information necessary to devise the appropriate application. In addition, the contract unambiguously places the responsibility on Advanced Conveyor to verify that any proposed solution satisfies its requirements. There is no term in the contract making any promises to Norplas, including "ergonomic engineering" of the manipulators. Thus, the trial court did err in making Finding of Fact No. 13.
Moreover, the trial court's judgment finding that J J breached its contract with Advanced Conveyor and express "Guarantee and Warranty" is against the manifest weight of the evidence.
Where a judgment is supported by some competent, credible evidence going to every essential element of the case, this court will not reverse that judgment as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. In order to prevail on a breach of contract claim a plaintiff must demonstrate, by a preponderance of the evidence, that a contract existed, that plaintiff fulfilled his obligations, that defendant failed to fulfill his obligations and that damages resulted from this failure.Lawrence v. Lorain Cty. Community College (1998), 127 Ohio App.3d 546,548-549; McCullion v. Ohio Valley Mall (Feb. 10, 2000), Mahoning App. No. 97CA175, unreported.
This was a commercial contract negotiated freely between two sophisticated business entities, Advanced Conveyor and J J, acting at arms length and who the evidence showed had done business together on other occasions. Advanced Conveyor failed to offer any competent, credible evidence to establish that appellants failed to satisfy their obligations under that contract. To the contrary, the evidence offered at trial demonstrated that the manipulators were designed and constructed in conformance with the requirements and revisions provided by Advanced Conveyor. Furthermore, no evidence was presented to show that J J breached any of the "Guarantee and Warranty" provisions. Whatever promises made by Advanced Conveyor to Norplas were not incorporated into the contract between the parties in this case. Thus, while the manipulators may not have functioned in the manner envisioned by Norplas, any failure to do so cannot be attributed to a breach of contract on the part of J J. Rather, this issue is a matter to be settled to between Norplas and Advanced Conveyor.
Advanced Conveyor also argues in its brief that appellants breached an implied warranty of fitness for a particular purpose and an implied warranty of merchantability. Neither of these theories of recovery were pled by Advanced Conveyor or considered by the trial court in reaching its decision. The sole bases of the trial court's judgment are breach of an express contract and breach of the written guarantee and warranty provided in that contract. Well-settled law provides that "[a] party may not assert a new legal theory for the first time before an appellate court." AMF, Inc., v. Mravec (1981), 2 Ohio App.3d 29, 32, citing Kalishv. Trans World Airlines (1977), 50 Ohio St.2d 73; Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41. As the issue regarding implied warranties was not properly raised by defendants in the trial court, we decline to consider it for the first time on appeal.
Because the trial court's judgment is against the manifest weight of the evidence, appellants' sole assignment of error is found well-taken. The judgment of the Lucas County Court of Common Pleas is reversed, and, pursuant to App.R. 12(C), this court renders, based upon the evidence offered at trial, the judgment the trial court should have entered. Judgment is entered in favor of in favor of Techni-Kal Systems, Inc., and J J Manufacturing Co., Inc. This cause is ordered dismissed at Advanced Conveyor's costs. In addition, Advanced Conveyer Systems 
Fabrication, Inc., is ordered to pay the costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Mark L. Pietrykowski, P.J. CONCUR.