This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Anthony Mauro, appeals the decision of the Akron Municipal Court, which found him personally liable to appellee, James Stimler. This Court affirms.
 I. {¶ 2} On January 9, 2001, Anthony Mauro, James Stimler, Richard Kasay, and two of Mauro's children met to discuss numerous issues regarding Mauro's real estate businesses. The meeting was to be a chance for Mauro and his family to meet Stimler and see if Mauro wished to hire Stimler to investigate his estate planning and businesses and identify any corrections that needed to be made from a legal standpoint. Mauro did not authorize Stimler to begin working at that meeting. Instead, Mauro told Stimler that either he or Kasay would contact Stimler if Mauro wished him to begin working on his behalf. Within a couple of days after the January 9 meeting, Kasay contacted Stimler and told him to "get to work and see what we need to do to fix it." For the next three months, Stimler sorted through hundreds of pages of business documents supplied to him by Mauro, his employees, and his accountant. Stimler developed an eight part correction and action plan which he presented to Mauro at a meeting on April 17, 2001. Mauro did not decide at that meeting whether he wanted to proceed with the plan Stimler had developed. Rather, he told Stimler that either he or Kasay would get in touch with him. Also, Kasay asked Stimler to research the effects of the anticipated changes to the federal estate tax law would have to the plan that Stimler presented to Mauro on April 17, 2001. Stimler heard nothing from either Mauro or Kasay during the next few months. On August 31, 2001, Stimler sent Mauro an invoice in the amount of $6,636.00 and a letter explaining the relevance of the anticipated changes in federal estate tax law. On September 11, 2001, Mauro sent Stimler a letter expressing dissatisfaction with Stimler's services and denying that he had agreed to pay Stimler for the work he had already performed.
 {¶ 3} On April 5, 2002, Stimler filed suit in Akron Municipal Court against Anthony C. Mauro (aka Anthony C. Santomauro), Urban Imperial Building and Rental Corporation, Silver Lake Manor, Inc., and the Mauro Family Limited Partnership alleging fraud and complaint on account. The case proceeded to trial before a jury. The jury found Mauro solely liable to Stimler in the amount of $6,636.00. The jury found in favor of Mauro on the fraud claim.
 {¶ 4} Mauro timely appealed, setting forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"There was insufficient evidence presented to support a finding that a contract had been entered into between the parties, therefore, appellant is not obligated to appellee."
 SECOND ASSIGNMENT OF ERROR
"The jury verdict was against the manifest weight of the evidence and must be reversed."
 {¶ 5} Appellant's two assignments of error have been combined for purposes of discussion. Appellant's first assignment of error challenges the sufficiency of the evidence. In his second assignment of error, appellant argues that the jury's verdict is against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case.
 {¶ 6} As a preliminary matter, this Court notes that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 7} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 8} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286. In determining whether a judgment is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175; see, also State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 9} Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 10} "An action on an account is an action for a breach of contract. Where the defendant denies all the allegations of the complaint, the plaintiff has the burden of proving by a preponderance of the evidence all the elements of a claim for breach of contract." AMF,Inc. v. Mravec (1981), 2 Ohio App.3d 29, paragraph two of the syllabus. The elements of a claim for breach of contract "include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994),98 Ohio App.3d 597, 600.
 {¶ 11} In the present case, Mauro argues that the record does not support the jury's conclusion that there was a contract between the parties. Specifically, Mauro avers that there was no meeting of the minds.
 {¶ 12} Stimler testified on behalf of himself at trial. Stimler testified that, at the January 9, 2001 meeting, he made it clear that he expected to be paid for any work that he performed on behalf of Mauro. According to Stimler's testimony, Mauro said that either he or Kasay would contact Stimler if Mauro wished him to begin evaluating his financial situation. Stimler stated that Kasay called him the next day and authorized him to start working on behalf of Mauro. In addition, Stimler testified that Mauro provided him with all the necessary documents for him to begin evaluating Mauro's financial situation. Furthermore, Stimler stated that Mauro told him that he was "quite knowledgeable about these things[.]"
 {¶ 13} Stimler stated that, at the April 17, 2001 meeting, Mauro did not object when Stimler told him he owed him approximately $6,000 as of that date.
 {¶ 14} Kasay also testified at the trial. Kasay testified that he was present at the January 2001 meeting. Upon being questioned by Stimler, Kasay admitted that Stimler's billing rates were reviewed at that meeting. Kasay testified that Stimler was to do no work until either he or Mauro contacted him. When questioned by Stimler regarding the conversation he had with Mauro after the January 2001 meeting, Kasay stated:
"I talked to Mr. Mauro shortly after we left the meeting at your office, and I said Tony, what do you want me to tell Stimler, do you want him to get going or no, and he said call him up and tell him to get going."
 {¶ 15} Furthermore, Kasay stated that he called Stimler within a couple of days of the January meeting and told him to begin paid work for Mauro. Stimler then questioned Kasay regarding whether Mauro knew that he would start incurring attorney fees when he told Kasay to tell Stimler to begin working for him:
"Q. In the context of your discussion with Tony Mauro, was there any question in your mind that he knew that get going meant that he would start incurring attorney fees[?]
"* * *
"* * *
"A. I did not ask Mr. Mauro, Tony do you know you're starting the meter running. In my mind, the meter was gonna start running.
"Q. And at the January meeting when I was there with Mr. Mauro, I made it very clear to him that I would not begin work unless I was paid for the investigation.
"A. Yeah, you made it clear that you would charge or you would try to get your paralegal to do some of the work at a lesser rate, sure."
 {¶ 16} Mr. Mauro testified at trial that he never authorized Stimler to do anything other than give him a plan and an estimate for his estate planning.
 {¶ 17} Obviously, there was conflicting testimony as to whether or not a contract existed between the parties in this case. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} After a review of the record, this Court cannot conclude that the jury created a manifest miscarriage of justice in determining that a contract existed between the parties in the instant case. Mauro's assignments of error are overruled.
 III. {¶ 19} The decision of the Akron Municipal Court is affirmed.
Judgment affirmed.
Baird, P.J. and Whitmore, J. concur.