[Cite as *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 2011-Ohio-6646.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96717**

## KWIKCOLOR SAND

PLAINTIFF-APPELLANT

vs.

## FAIRMOUNT MINERALS LTD., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-711688

**BEFORE:** S. Gallagher, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEY FOR APPELLANT**

Arlene Sokolowski-Craft
Craft Law Offices
7425 Royalton Road
North Royalton, OH   44133

**ATTORNEYS FOR APPELLEES**

Colleen Conley
Mark I. Wallach
Calfee, Halter & Griswold LLP
800 Superior Avenue
1400 Keybank Center
Cleveland, OH   44114-2688

SEAN C. GALLAGHER, J.:

{¶ 1}   Plaintiff-appellant Kwikcolor Sand ("KCS") appeals the decision of the trial court granting summary judgment in favor of defendants-appellees Fairmount Minerals, Ltd., Best Sand Corporation, and Mineral Visions, Inc. (collectively "appellees").   For the following reasons, we affirm.

{¶ 2}   KCS asserted four, self-styled claims against appellees in its amended complaint: action on an account, breach of contract, unjust enrichment, and punitive damages.   KCS attached 94 invoices to that complaint.   In January 2004, KCS contracted with appellees to supply colored quartz for prices set forth in "Schedule A"

attached to the Material Purchase and Distribution Agreement ("MPDA"). The MPDA was a requirement contract where KCS would provide appellees with the necessary amounts of colored quartz upon appellees' request. The shipments were triggered by appellees issuing a purchase order to KCS. Per the terms of the MPDA, the contract self-renewed yearly unless either party submitted a notice of termination 90 days prior to the expiration of the contract. The MPDA also contained a clause that prohibited modifications unless the modifications were contained in a signed writing, the so-called no-oral-modification clause.

{¶ 3} Appellees orally renegotiated prices with KCS sometime in 2005 due to overall pricing concerns. Appellees presented evidence through the affidavits of Christopher Calhoun and Maureen Lynn, appellees' employees, that appellees and KCS based pricing decisions on a price list dated June 27, 2005, provided by KCS. No signed writing memorialized this agreement. In consideration of the 2005 reduced pricing structure, appellees offered KCS a discount on the raw sand it purchased from appellees. KCS purchased raw sand from appellees, added the colored quartz to the raw sand, and then resold the mixture to appellees.

{¶ 4} After June 2005, and through October 2006, KCS issued 73 invoices reflecting the prices contained in the 2005 price list. Appellees paid and KCS accepted the amounts owed as reflected on the invoices. On September 25 to 27, 2009, KCS reissued invoices for these 73 transactions based on the prices contained in the Schedule

A price list.[1]  For the sake of simplicity, we will adopt appellees' nomenclature regarding those invoices and refer to the 73 invoices as the "reissued invoices."  These 73 invoices mirrored the original invoices, with the exception that KCS inserted "-A" following the original invoice number, reflected the payment made on the original invoice, and charged according to the Schedule A pricing.  These invoices also included the following statement: "Invoice price reflects 'Schedule A' of [MPDA], which was composed by Best Sand.  Invoice balance [is] due according to 'Schedule A,' which has not been paid in accordance with the legal terms of the contract."  Appellees continuously disputed owing the amount due on the reissued invoices.

{¶ 5}  Sometime around October 2006, the relationship between KCS and the appellees began to sour.  According to KCS, at this time appellees and KCS were negotiating some form of a merger between the companies, demonstrated by the dated email KCS attached to its brief in opposition to summary judgment.  The merger never proceeded beyond the discussion stages.

---

[1]  The 70 reissued invoices are as follows: 5002-A, 5005-A, 5023-A, 5050-A, 5074-A, 5082-A, 5097-A, 5105-A, 5106-A, 5112-A, 5115-A, 5120-A, 5125-A, 5130-A, 5133-A, 5135-A, 5137-A, 5141-A, 5157-A, 5165-A, 5170-A, 5173-A, 5174-A, 5182-A, 5192-A, 5199-A, 5202-A, 5210-A, 5214-A, 5215-A, 5220-A, 5222-A, 5227-A, 5229-A, 5237-A, 5240-A, 5244-A, 5246-A, 5247-A, 5256-A, 5260-A, 5261-A, 5266-A, 5267-A, 5271-A, 5272-A, 5274-A, 5276-A, 5283-A, 5291-A, 5294-A, 5297-A, 5298-A, 5304-A, 5308-A, 5310-A, 5311-A, 5314-A, 5321-A, 5333-A, 5336-A, 5344-A, 5347-A, 5350-A, 5364-A, 5368-A, 5369-A, 5393-A, 5398-A, and 5400-A.  In addition to these 70 invoices, there are three invoices for which KCS and appellees agreed, at the time of issuance, that nothing was owed because of issues with the delivered product.  These three invoices, numbered 5251-A, 5255-A, and 5293-A, will be included with the reissued invoices for the purposes of this appeal.

{¶ 6} On September 1, 2006, KCS issued a written letter notifying appellees that KCS would terminate their relationship effective January 15, 2007. During the termination period, appellees submitted purchase orders to KCS for more products. Appellees' purchase orders reflected the 2005 prices. KCS delivered the requested product, but ultimately issued invoices based on the prices listed in Schedule A of the MPDA. Appellees paid KCS based on the 2005 pricing and as indicated on the purchase orders submitted to KCS. There are 14 of the so-called "divergent invoices."[2]

{¶ 7} Finally, there are seven invoices for which the appellees established, through their evidentiary submissions, that the goods or services identified in the invoices were never requested, the "additional invoices."[3] In the additional invoices, KCS requested payment for storage of surplus product, transactional fees, and for quantities of colored quartz that were delivered to KCS's facilities. Prior to the transactions reflected by the additional invoices, the product requested by appellees would be shipped directly to appellees' client, not to KCS's facility.

{¶ 8} Appellees filed a motion for summary judgment in which they argued that the parties modified the Schedule A pricing in 2005, that both parties operated under a modified price structure, and that appellees issued purchase orders, using the 2005

---

[2] The 14 divergent invoices are as follows: 5367-A, 5383-A, 5416-A, 5417-A, 5421-A, 5422-A, 5423-A, 5436-A, 5457-A, 5458-A, 5459-A, 5469-A, 5474-A, and 5487-A.

[3] The seven additional invoices are as follows: 5171-A, 5442-A, 5489-A, 5494-A, 5507, 5508, and 5509.

pricing, which were accepted by KCS without any objections. The trial court granted summary judgment in favor of appellees on all claims, finding that KCS failed to identify any genuine issue of material fact necessitating trial. KCS timely appealed, raising the five assignments of error, which are attached in the appendix to this opinion.

{¶ 9} Before addressing the merits of the trial court's summary judgment decision, we will first address KCS's fourth assignment of error in which KCS contends that the trial court erred by "permitting appellees to make an issue of [KCS's] other lawsuit." KCS has not identified the place in the record where the trial court allowed appellees to make an issue over KCS's previous lawsuit. The trial court's docket is silent as to the previous lawsuit. Pursuant to App.R. 16(A)(3), we decline to address KCS's argument and overrule its fourth assignment of error.

{¶ 10} We will address KCS's first, second, third, and fifth assignments of error together. KCS contends that the trial court erred by granting summary judgment in favor of appellees on all claims. For the following reasons, KCS's assignments of error are overruled.

{¶ 11} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d

637, ¶ 12.   While a party requesting summary judgment bears the initial burden to show the basis of the motion using the evidence allowed under Civ.R. 56(C), once the moving party satisfies this burden of production, the nonmoving party must offer specific facts showing a genuine issue for trial.   *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264.

{¶ 12} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."   *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc*. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.

{¶ 13} We note that although KCS identified four claims, it actually advanced two claims, breach of contract and unjust enrichment.   "Punitive damages" is not a stand-alone claim.   It is a measure of damages.   Similarly, an action on an account is a pleading device "used to consolidate several claims which one party has against another."  *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 440 N.E.2d 600, paragraph one of the syllabus.   The action on account simplifies pleadings by allowing a party to advance, as one claim, claims for separate breaches of contract based on a series of transactions by

providing a summary of accounting for the transactions. Id. at paragraph two of the syllabus. Therefore, KCS's claim for an action on account is really one for breach of contract. We note this is further demonstrated by the fact that KCS provided the invoices for each individual transaction rather than the running account balance.

{¶ 14} "To succeed on a breach of contract claim, a party must prove the existence of a contract, that party's performance under the contract, the opposing party's breach, and resulting damages." *Povroznik v. Mowinski Builders, Inc.*, Cuyahoga App. No. 93225, 2010-Ohio-1669, ¶ 13. In the alternative, "unjust enrichment operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Gallo v. Westfield Natl. Ins. Co.*, Cuyahoga App. No. 91893, 2009-Ohio-1094, ¶19. Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment cannot exist where there is a valid and enforceable written contract. Id.; *Sivinski v. Kelley*, Cuyahoga App. No. 94296, 2011-Ohio-2145, ¶ 45.

{¶ 15} KCS's unjust enrichment claim fails as a matter of law. KCS alleged, and appellees admitted to, the existence of an underlying contract governing the parties' relationship with each other. Neither party challenged the enforceability or the validity of the MPDA. The crux of the parties' dispute centers on whether the parties' oral modification of the MPDA is enforceable. If the oral modification is unenforceable, the MPDA still governs the parties' relationship. In light of the fact that a valid and

enforceable contract exists, Ohio law precludes KCS's claim for unjust enrichment. KCS is entitled to compensation for goods and services only according to the terms of the MPDA. See *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920. The trial court did not, therefore, err in granting summary judgment in appellees' favor upon KCS's unjust enrichment claim.

{¶ 16} The primary issue raised in the current case is whether the parties' oral modification of the price structure in the MPDA is enforceable.

No-Oral-Modification Clause

{¶ 17} KCS alleges that appellees breached the terms of the MPDA by failing to remit payments, based on the Schedule A pricing, for the outstanding balances reflected on the 94 invoices, and further claims that any modification of prices should have been effectuated through a signed writing pursuant to the explicit terms of the MPDA. Appellees argue that KCS originally invoiced appellees for products based on the 2005 price list thereby waiving the no-oral-modification provision and modifying the price terms of the MPDA.

{¶ 18} R.C. Chapter 1302 governs sales transactions such as the ones between KCS and appellees. R.C. 1302.02. R.C. 1302.12(B) provides in pertinent part that a "signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded * * *." "No-oral-modification clauses are designed to protect against fraudulent or mistaken oral testimony concerning transactions

subsequent to a written contract. Nevertheless, the code drafters recognized the potential for abuse and various concerns that rigid no-oral-modification clauses may create. Accordingly, the drafters provided an important exception to the enforceability of no-oral-modification clauses." *Fields Excavating, Inc. v. McWane, Inc.*, Clermont App. No. CA2008-12-114, 2009-Ohio-5925, ¶ 15. If the attempt to modify or rescind the agreement is not memorialized by a signed writing, the attempt nonetheless can operate as a waiver of the no-oral-modification provision. Id.; R.C.1302.12(D). R.C. 1302.12 must also be read in conjunction with R.C. 1302.11 (eff. 7-1-62),[4] which provides that the course of performance between the parties will be relevant to show a waiver or modification of any term inconsistent with such course of performance.

{¶ 19} Generally in Ohio, the issue of whether a no-oral-modification clause is waived is a question of fact. *Fields Excavating, Inc.*, 2009-Ohio-5925, at ¶ 21. In this case, the material facts are not disputed. A "fact-specific inquiry with no disputed facts does not create a question of material fact preventing summary judgment." *Owners Ins. v. Barone* (June 6, 2011), N.D. Ohio No. 3:10 CV 116.

{¶ 20} It is undisputed that KCS and appellees orally agreed to modify the Schedule A pricing and operated under the modified 2005 pricing from June 2005 through October 2006. KCS does not dispute it agreed to the modified pricing. It

---

[4] This is the version of R.C. 1302.11 effective during the course of the proceedings.

relies solely on the no-oral-modification clause to challenge the enforceability of the modification.

{¶ 21} Both parties, however, operated under the modified pricing structure and thereby waived any right to enforce the stringent modification requirement in the MPDA. See R.C. 1302.12(D); *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 583 N.E.2d 1056 (holding that even a gratuitous oral agreement to modify a prior written agreement is binding if it is acted upon by the parties). Appellees established through their undisputed evidentiary submissions that KCS provided, and appellees accepted, the 2005 price list and all parties operated under the modified pricing structure.

{¶ 22} The oral modification of the MPDA pricing is enforceable in this case, and the MPDA was modified by substituting the Schedule A pricing with the 2005 pricing. KCS waived the no-oral-modification clause for the purposes of modifying the price structure and could not revert to the original Schedule A pricing without further agreement between the parties. It is undisputed that appellees never agreed to revert to the Schedule A pricing. In light of the fact that KCS waived, through its course of performance, the no-oral-modification provision, the pricing terms of the MPDA were modified and the parties were contractually bound to the 2005 pricing structure for the duration of the MPDA or until further agreement amongst the parties to modify the terms of the MPDA.

Reissued and Divergent Invoices

**{¶ 23}** We agree with the trial court, upon de novo review, that appellees established the basis of their motion, i.e., that no genuine issue of material fact existed as to whether appellees breached the contract. The trial court, therefore, did not err in granting summary judgment upon KCS's breach of contract claim regarding the reissued and divergent invoices.

**{¶ 24}** KCS cannot establish that appellees breached the modified MPDA. Appellees paid all that was due and owing according to terms of the modified agreement. The parties agreed to modify the pricing structure of the MPDA, and appellees were not contractually bound to pay the outstanding balances on the reissued and divergent invoices, which were based on the Schedule A pricing. KCS's assignments of error to the contrary are overruled.

Additional Invoices

**{¶ 25}** KCS, in the additional invoices, requested payment for storage of surplus products, for other transactional fees, and for quantities of colored quartz that were delivered to KCS's facilities. Appellees disputed ever requesting the colored quartz delineated in the additional invoices. Further, appellees argued that the storage and other transactional fees were not authorized under the MPDA and no other contract existed governing such fees.

{¶ 26} In order to succeed on a breach of contract claim, a party must prove, among other elements, a contract existed and damages as a result of another's breach of contract. *Povroznik*, 2010-Ohio-1669, ¶ 13. Appellees produced undisputed evidence satisfying their initial burden to show the basis of the summary judgment motion. *Dresher*, 75 Ohio St.3d at 293-294. Specifically, appellees presented undisputed evidence that appellees never agreed to purchase the product invoiced. Further, the MPDA is silent as to storage and transactional fees and the undisputed evidence advanced by appellees demonstrated that appellees never otherwise agreed to the storage or transactional fees.

{¶ 27} KCS, in its sole argument relating to the additional invoices, attempted to create an issue of fact by introducing pictures of some stored product. Even if those pictures demonstrate that KCS indeed stored the product, the argument is misplaced. The issue is not whether KCS stored the product. The issue is whether appellees breached an agreement with KCS to store the product. Pictures of stored products do not demonstrate that the appellees agreed to have KCS store anything, they merely demonstrate that KCS stored some product at its facility. KCS's assignments of error to the contrary are overruled.

Conclusion

{¶ 28} Reviewing the undisputed evidence, a reasonable trier of fact could reach only one conclusion. The parties' oral modification of the MPDA pricing structure is

enforceable, and appellees never agreed to pay for the goods or services billed in the additional invoices.    The trial court did not err in granting summary judgment in appellees' favor upon all claims.    The decision of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR

Appendix

"1.   The trial court erred when it granted defendant/appellees' motion for summary judgment."

"2.   The trial court erred to the prejudice of appellant by granting summary judgment to appellees on appellant's contract claim and failing to address the course of dealing question."

"3.   The trial court erred to the prejudice of appellant in granting summary judgment to appellees on appellant's breach of contract for storage fees relating to appellees' materials."

"4.   The trial court erred to the prejudice of appellant by permitting appellees to make an issue of appellant's other lawsuit and other bills mailed to appellees, when such issues are irrelevant to the case."

"5.   The trial court erred to the prejudice of appellant in granting summary judgment to appellees on appellant's unjust enrichment claim."