[Cite as *Digitalight Sys., Inc. v. Cleveland Clinic Found.*, 2022-Ohio-1400.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

DIGITALIGHT SYSTEMS, INC.,            :

    Plaintiff-Appellant,            :

                                  No. 110723

    v.            :

CLEVELAND CLINIC FOUNDATION,    :

    Defendant-Appellee.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 28, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-935343

---

*Appearances:*

Davis & Young and Dennis R. Fogarty, *for appellant.*

Hahn Loeser & Parks, LLP, Robert J. Fogarty, and Gregory A. Thompson, *for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Plaintiff-appellant, Digitalight Systems, Inc., brings this appeal challenging the trial court's decision granting summary judgment in favor of defendant-appellee, Cleveland Clinic Foundation, in Digitalight's action for breach of contract, unjust enrichment, action on an account, and promissory estoppel.

Digitalight argues that genuine issues of material fact existed that precluded judgment as a matter of law in Cleveland Clinic's favor on Digitalight's breach-of-contract claim and that the trial court erred in granting summary judgment in Cleveland Clinic's favor on Digitalight's claims for unjust enrichment, promissory estoppel, and action on an account. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Digitalight is a Florida corporation that supplies health care equipment. In response to the equipment needs associated with the COVID-19 pandemic, Cleveland Clinic engaged Digitalight for the purpose of purchasing "KN95" surgical masks (hereinafter "masks").[1]

{¶ 3} Digitalight submitted a quote to the Cleveland Clinic on March 20, 2020. The unit price of each individual mask was $3.99. Digitalight's quote provided that the total cost of the 500,000 masks Cleveland Clinic sought to purchase would be $1,995,000. The quote made no mention of any terms and conditions that would apply to the sale.

{¶ 4} The next day, on March 21, 2020, Cleveland Clinic submitted a "rush" purchase order to Digitalight, offering to purchase 500,000 masks for $1,995,000. Cleveland Clinic's purchase order provided, in relevant part, "Deliver by March 22, 2020 unless specified by line[.]" Steve Pohlman, Cleveland Clinic's senior director

---

[1] Cleveland Clinic also purchased hand sanitizer from Digitalight.

of materials management, verbally extended the delivery deadline to March 31, 2020.[2]

{¶ 5} Cleveland Clinic's purchase order incorporated Cleveland Clinic's "Purchase Order Terms and Conditions." The purchase order provided, in relevant part, "*Seller's commencement of Services or Seller's shipment of any Products shall be deemed to be acceptance of Terms and Conditions located at www.clevelandclinic.org/SCM[.]" Cleveland Clinic's terms and conditions contain a "Cancellation/Termination," under which Cleveland Clinic could terminate or cancel a purchase order, in whole or in part, "at any time upon written notice to Seller."

{¶ 6} The record reflects that Digitalight accepted Cleveland Clinic's offer. Digitalight began working to fulfill Cleveland Clinic's order on March 23, 2020, and, on March 25, 2020, Digitalight sent a "revised [p]roposal"[3] to Cleveland Clinic confirming Cleveland Clinic's order. Digitalight's revised proposal contained, in relevant part, the specifications, instructions, and the "Certification of FDA Registration" for the masks. The revised proposal also included Digitalight's "Terms of Sale and Security Agreement."

{¶ 7} Digitalight sent three shipments of masks to Cleveland Clinic. First, in late March or early April, Digitalight donated 6,000 masks to Cleveland Clinic.

---

[2] See Pohlman's affidavit, executed on March 19, 2021, at ¶ 12.
[3] See affidavit of Dewey Gosselin, Digitalight's CEO and owner, executed on February 18, 2021, at ¶ 7.

Cleveland Clinic's main point of contact at Digitalight was James Haney. Haney sent an email to Pohlman and other Cleveland Clinic representatives on March 30, 2020, indicating that he "was able to get 6,000 mask[s] out tonight" and that "these [masks] are not out of [Cleveland Clinic's] order[,] these are a donation." The parties dispute whether Cleveland Clinic received the first shipment. Subsequently, as set forth in further detail below, Pohlman offered to pay Digitalight for the donated masks.

{¶ 8} Digitalight failed to deliver the 500,000 masks to Cleveland Clinic by March 31, 2020. On April 15, 2020, Pohlman sent an email to Haney cancelling Cleveland Clinic's purchase order explaining "[i]t has taken too long to get the [masks] to the [United States]." Pohlman indicated that Cleveland Clinic would pay for the 6,000 masks that Digitalight donated to Cleveland Clinic. Pohlman's email was sent at 3:25 p.m. At 4:44 p.m., Haney sent an email to Pohlman acknowledging the cancellation and thanking Pohlman for the update. Subsequent emails were sent from Cleveland Clinic to Digitalight on April 27 and 28, 2020, confirming cancellation of the purchase order.

{¶ 9} After Cleveland Clinic cancelled the purchase order, Digitalight sent a second shipment of approximately 85,000 masks to Cleveland Clinic on or about May 21, 2020. The parties dispute whether Cleveland Clinic "accepted" the second shipment. Digitalight sent a third shipment of approximately 409,000 masks to Cleveland Clinic on or about May 21, 2020. It is undisputed that Cleveland Clinic rejected this third shipment. Before Digitalight sent the second and third

shipments, Pohlman sent an email to Haney on May 19, 2020, that provided, in relevant part, "I cancelled the [purchase order] for the mask shipment on April 27, 2020. If I receive these[,] I will not be paying for them. Please do not ship them. Please confirm you received this e-mail."

{¶ 10} Based on the disputes that arose during the course of the parties' transaction, Digitalight filed a complaint against Cleveland Clinic on July 29, 2020. Digitalight asserted causes of action for breach of contract, unjust enrichment or quantum meruit, action on an account, and promissory estoppel.

{¶ 11} Cleveland Clinic filed an answer on September 29, 2020. Therein, Cleveland Clinic acknowledged that (1) it received the first shipment of approximately 6,000 masks, (2) it received the second shipment of masks after Cleveland Clinic had cancelled the purchase order, and (3) it rejected the third and final shipment of masks.

{¶ 12} On March 2, 2021, Digitalight filed a motion for partial summary judgment. Therein, Digitalight argued that it was entitled to judgment as a matter of law on its breach-of-contract claim pertaining to the first and second shipments of masks to Cleveland Clinic. Digitalight acknowledged that genuine issues of material fact remained regarding the third shipment that was rejected by Cleveland Clinic.

{¶ 13} On March 22, 2021, Cleveland Clinic filed a motion for summary judgment on all of Digitalight's claims. Therein, Cleveland Clinic argued that it was entitled to judgment as a matter of law on Digitalight's breach-of-contract claim

because (1) Digitalight failed to deliver the 500,000 masks on or before March 31, 2020, (2) Cleveland Clinic cancelled the purchase order, and (3) Digitalight acknowledged Cleveland Clinic's cancellation before shipping the masks. Cleveland Clinic argued that it was entitled to judgment as a matter of law on Digitalight's claim for action on an account because it "rises and falls with its underlying breach of contract claim." Finally, Cleveland Clinic argued that it was entitled to judgment as a matter of law on Digitalight's equitable claims for unjust enrichment or quantum meruit and promissory estoppel because a binding contract existed between the parties. In support of its summary judgment motion, Cleveland Clinic submitted an affidavit of Pohlman, Cleveland Clinic's "Purchase Order Terms and Conditions" that were incorporated into the purchase order, and email correspondence between Pohlman and other Cleveland Clinic representatives and Haney and other Digitalight representatives.

{¶ 14} On April 19, 2021, Digitalight filed a combined brief in support of its motion for partial summary judgment and in opposition to Cleveland Clinic's motion for summary judgment. Therein, Digitalight argued that Cleveland Clinic owed approximately $400,000 for the first and second shipments of masks, and that Cleveland Clinic cancelled the purchase order for the remaining masks without justification. Digitalight raised a "battle of the forms" argument, maintaining that the transaction was governed by Digitalight's "Terms of Sale and Security Agreement," rather than Cleveland Clinic's "Purchase Order Terms and Conditions."

Finally, Digitalight argued that it did not breach any contractual provision by failing to deliver the masks on or before a specific date.

{¶ 15} On April 26, 2021, Cleveland Clinic filed a reply brief in support of its motion for summary judgment. Therein, Cleveland Clinic argued that Digitalight failed to meet the contractual requirement that the masks would be delivered on or before March 31, 2020. Cleveland Clinic argued that it was discharged from its duty to tender payment to Digitalight upon canceling the order. Cleveland Clinic disputed Digitalight's claim that Cleveland Clinic was obligated to pay for the first shipment of 6,000 masks, arguing that these masks were donated by Digitalight and Cleveland Clinic never received the first shipment.

{¶ 16} On July 9, 2021, the trial court issued a judgment entry denying Digitalight's motion for partial summary judgment and granting Cleveland Clinic's motion for summary judgment. Regarding Digitalight's breach-of-contract claim, the trial court concluded that (1) there was no contract regarding the first shipment of 6,000 donated masks and that Pohlman's subsequent offer to pay Haney for the masks was not supported by consideration; (2) Digitalight's breach-of-contract claim fails due to lack of performance — Digitalight's failure to deliver the masks on or before March 30, 2020; (3) alternatively, even if Digitalight's late delivery did not constitute failed performance, Cleveland Clinic cancelled the purchase order before Digitalight sent the second and third shipments. The trial court also held that Cleveland Clinic was entitled to judgment as a matter of law on Digitalight's

remaining claims for unjust enrichment or quantum meruit, promissory estoppel, and action on an account.

{¶ 17} On August 9, 2021, Digitalight filed the instant appeal challenging the trial court's July 9, 2021 judgment. Digitalight assigns two errors for review:

> I. The trial court erred in granting [Cleveland Clinic's] [m]otion for [s]ummary [j]udgment on Digitalight's claim for breach of contract.

> II. The trial court erred in granting [Cleveland Clinic's] [m]otion for [s]ummary [j]udgment on Digitalight's claims for unjust enrichment, promissory estoppel, and action on an account.

## A. Summary Judgment

{¶ 18} Both of Digitalight's assignments of error challenge the trial court's decision granting summary judgment in favor of Cleveland Clinic.

## 1. Standard of Review

{¶ 19} Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

**{¶ 20}** The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

**{¶ 21}** Once the moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the burden shifts to the nonmoving party to put forth evidence demonstrating the existence of a material issue of fact that would preclude judgment as a matter of law. *Dresher* at *id.* In order to meet this burden, the nonmoving party may not merely rely upon allegations or denials in his or her pleadings, and must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56(E), demonstrating the existence of a genuine issue of material fact for trial. *See Houston v. Morales*, 8th Dist. Cuyahoga No. 106086, 2018-Ohio-1505, ¶ 7, citing *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Dresher* at *id.*

### 2. Breach of Contract

**{¶ 22}** In its first assignment of error, Digitalight argues that the trial court erred in granting summary judgment in favor of Cleveland Clinic on Digitalight's breach-of-contract claim.

{¶ 23} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

{¶ 24} In this appeal, Digitalight argues that genuine issues of material fact existed that precluded summary judgment in favor of Cleveland Clinic on its breach-of-contract claim. Specifically, Digitalight argues that genuine issues of material fact existed regarding (1) whether the first shipment of 6,000 masks was a donation, (2) the timeliness of the delivery of the second and third shipments of masks and whether Digitalight breached the parties' agreement with respect to the timeliness issue, and (3) whether Cleveland Clinic accepted the masks after attempting to cancel the purchase order.

### a. First Shipment of 6,000 Masks

{¶ 25} First, Digitalight argues that a genuine issue of material fact exists regarding whether the first shipment of 6,000 masks was a donation from Digitalight to Cleveland Clinic.

{¶ 26} As noted above, the parties dispute whether the first shipment of masks was, in fact, received by Cleveland Clinic. Pohlman averred in his affidavit that "[t]he 6,000 mask donation from Digitalight never arrived at any Cleveland Clinic facility." *Id*. at ¶ 15. In support of its partial summary judgment motion,

Digitalight submitted a July 24, 2020 letter from Cleveland Clinic's Deputy Chief Legal Officer, Lisa Barrett, to Digitalight's counsel, that provided, in relevant part,

> After receiving the "good faith" shipment of the 6,000 masks in early April, we had the masks fit tested, as required by [the Occupational Safety and Health Administration] in order for them to be used by our employees. The masks were of such poor quality that they could not sustain a seal; and therefore could not pass the fit test and could not be used for the purposes for which they were purchased.

{¶ 27} This letter suggests that Cleveland Clinic did, in fact, receive the shipment of the 6,000 masks. Regardless of whether Cleveland Clinic received these masks, the record reflects that these masks were donated by Digitalight.

{¶ 28} Pohlman averred in his affidavit that "[b]y email dated March 30, 2020, Digitalight claimed that it had obtained 6,000 masks, which were being shipped to Cleveland Clinic that night. Digitalight stated the 6,000 masks were a donation." *Id.* at ¶ 14. The emails that Cleveland Clinic submitted in support of its summary judgment motion demonstrate that the masks were donated to Cleveland Clinic by Digitalight.

{¶ 29} The March 30, 2020 email from Haney to Kevin Velasquez,[4] provided, in relevant part, "I was able to get 6,000 masks[s] out tonight. Again *these are not out of your order these are a donation.*" (Emphasis added.) The April 10, 2020 email from Pohlman to Haney provided, in relevant part, "For the record, we never received the 6,000 masks. * * * In addition, these 6,000 [masks] were not part of

---

[4] Velasquez was Cleveland Clinic's nonclinical sourcing director.

our order, this was *a good faith shipment* that you made to me because of the now, almost 2 week miss on your promised delivery date." (Emphasis added.)

{¶ 30} Cleveland Clinic did, in fact, offer to pay for the donated masks. Pohlman averred in his affidavit that "Cleveland Clinic later offered to pay Digitalight for the 6,000 masks, but that offer was gratuitous, lacked consideration, and has since been withdrawn." *Id*. at ¶ 15. The April 15, 2020 email from Pohlman to Haney, provided, "[u]nfortunately, [i]t has taken too long to get the [masks] to the [United States]. As a result, I asked my team to cancel the [purchase order] today. We will pay for the 6,000 [masks] you sent so you are made whole on those." In an April 28, 2020 email from Pohlman to Velasquez and Haney, Pohlman confirmed that he agreed to pay for the 6,000 masks because Cleveland Clinic cancelled the rest of the order.

{¶ 31} Although Cleveland Clinic offered to pay for the donated masks, the record reflects that this offer was not supported by consideration.

{¶ 32} "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Widok v. Estate of Wolf*, 8th Dist. Cuyahoga No. 108717, 2020-Ohio-5178, ¶ 52. Courts may generally not inquire into the adequacy of consideration, which is left to the parties as "the sole judges of the benefits or advantages to be derived from their contracts." *Hotels Statler Co., Inc. v. Safier*, 103 Ohio St. 638, 644-645, 134 N.E. 460 (1921). Whether there is consideration at all, however, is a proper question for a court. *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17.

"Gratuitous promises are not enforceable as contracts, because there is no consideration. * * * A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract. * * * Likewise, conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts. * * * While it is true, therefore, that courts generally do not inquire into the adequacy of consideration once it is found to exist, it must be determined in a contract case whether any 'consideration' was really bargained for. If it was not bargained for, it could not support a contract."

*Id.*, quoting *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283-284, 704 N.E.2d 39 (9th Dist.1997).

{¶ 33} In the instant matter, we find that there remain no genuine issues of fact as to whether the alleged contract — Cleveland Clinic's offer to pay for the 6,000 masks — contained bargained-for consideration. The donation was purportedly shipped from Digitalight to Cleveland Clinic on March 30, 2020. Cleveland Clinic did not offer to pay for the donated masks until April 15, 2020, when it cancelled the purchase order. Accordingly, when Cleveland Clinic offered to pay for the masks, they had already been donated by Digitalight. The trial court did not err in granting summary judgment in favor of Cleveland Clinic in this respect.

### b. Timeliness of Delivery

{¶ 34} Second, Digitalight argues that a genuine issue of material fact exists regarding whether the timeliness of the delivery of the second and third shipments of masks constituted a breach of the parties' agreement and justified Cleveland Clinic's cancellation of the purchase order.

{¶ 35} As it did in opposing Cleveland Clinic's motion for summary judgment in the trial court, Digitalight argues in this appeal that "the date of delivery was not specified in any of the documents" and that Digitalight did not breach the agreement by delivering the masks in installments or shipments as they became available. Appellant's brief at 8. Digitalight's argument is unsupported by the record.

{¶ 36} Cleveland Clinic's purchase order unequivocally specified the date of delivery for the 500,000 masks ordered by Cleveland Clinic as March 22, 2020. Pohlman averred in his affidavit that he verbally extended the March 22 deadline to March 31, 2020. *Id.* at ¶ 12.

{¶ 37} The emails Cleveland Clinic submitted in support of its summary judgment motion demonstrate that the timeliness of delivery was, in fact, a material term of the parties agreement. In an April 10, 2020 email from Pohlman to Haney, Pohlman references the fact that almost two weeks had passed since the delivery date promised by Haney. In the April 15, 2020 email from Pohlman to Haney in which Pohlman cancelled the purchase order, Pohlman cited the fact that "[i]t has taken too long to get the [masks] to the [United States]." In an April 28, 2020 email from Haney to Pohlman, Haney acknowledges that the 6,000 masks had been "sent prior to *the delay of the full order*." (Emphasis added.)

{¶ 38} Digitalight failed to present any evidence contradicting the March 22, 2020 delivery date identified in Cleveland Clinic's purchase order, or Pohlman's assertion that he extended the delivery deadline to March 31, 2020. Furthermore, regarding performance — or delivery of the masks to Cleveland Clinic on or before

March 31, 2020 — Digitalight failed to present any evidence indicating that it either delivered the masks to Cleveland Clinic or made the masks available to a carrier on or before the March 31, 2020 deadline, or (2) that it delivered the masks to Cleveland Clinic or made the masks available to a carrier before Cleveland Clinic provided written notice that it was cancelling the order on April 15, 2020.

{¶ 39} Digitalight further raises a "battle of the forms" argument pursuant to R.C. 1302.10 and Section 2-207 of the Uniform Commercial Code ("UCC"). Digitalight contends that the masks were, in fact, delivered in a timely manner, and as a result, Cleveland Clinic was not relieved of its obligation to accept delivery and tender payment to Digitalight. The timeliness issue comes down to whether Digitalight's "Terms of Sale and Security Agreement," which was included in Digitalight's March 25, 2020 revised proposal to Cleveland Clinic, controls the parties' transaction, or whether Cleveland Clinic's "Purchase Order Terms and Conditions" are controlling. If Digitalight's agreement controlled, the delay in delivery was permissible and did not relieve Cleveland Clinic of its obligation to perform. If Cleveland Clinic's terms and conditions are controlling, Cleveland Clinic had a right to cancel the purchase order prior to shipment.

{¶ 40} After reviewing the record, we find that Digitalight failed to meet its burden of demonstrating the existence of a genuine issue of material fact regarding Cleveland Clinic's right to cancel the purchase order. R.C. 1302.10, governing additional terms in acceptance or confirmation, provides, in relevant part:

(A) A definite and seasonable expression of acceptance or a written confirmation that is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, *unless acceptance is expressly made conditional on assent to the additional or different terms.*

(B) The additional terms are to be construed as proposals for addition to the contract.  Between merchants, the terms become part of the contract unless one of the following applies:

(1) *The offer expressly limits acceptance to the terms of the offer.*

(2) They materially alter it.

(3) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(Emphasis added.)

{¶ 41} In the instant matter, the offer — Cleveland Clinic's March 21, 2020 purchase order — provided, in relevant part, "*Seller's commencement of Services or Seller's shipment of any Products shall be deemed to be acceptance of Terms and Conditions located at www.clevelandclinic.org/SCM[.]"  Accordingly, the purchase order incorporated Cleveland Clinic's "Purchase Order Terms and Conditions."

{¶ 42} Cleveland Clinic's terms and conditions provide, in relevant part,

Notwithstanding any different or additional terms or conditions contained in Seller's invoice, proposals or other communication, Seller accepts Buyer's order for products ("Products") or services ("Services") only on the condition that Seller expressly accepts these Terms and Conditions.  Unless Seller accepts these terms and conditions without deviation or reservation, no contract shall result from an order.  Any terms and conditions in any confirmation by Seller that states different or additional terms shall be null and void.  Buyer hereby objects to and rejects such different or additional terms and any such different or additional terms shall be deemed to be material alterations and notice of objection to such terms is hereby given.  Seller's commencement of performance of Services or Seller's shipment of any Products shall be deemed to be acceptance of these Terms and Conditions.  Any notice

by Seller objecting to these Terms and Conditions must be in writing separate from any form including but not limited to any invoice or acknowledgement form, and must be communicated to Buyer prior to any shipment of Products or commencement of any Services. Any amendment, waiver or other alteration of these Terms and Conditions by Seller shall be effective only if made by mutual agreement.

(Emphasis added.)

{¶ 43} This language expressly limited acceptance of Cleveland Clinic's offer to the terms set forth therein, including the Cleveland Clinic's terms and conditions.

{¶ 44} Digitalight's "Terms of Sale and Security Agreement" were added into the March 25, 2020 revised proposal. Digitalight's agreement provided, in relevant part,

(a) Unless agreed upon in writing to the contrary, this Agreement shall govern the sale, delivery and distribution of all products manufactured, sold or marketed, including spare parts thereto[.] * * *

* * *

(d) Any purchase contract hereunder shall become effective upon the mailing of a written acceptance of Purchaser's order by Seller. Any conditions of Purchaser which are contradictory to the conditions contained herein are invalid.

{¶ 45} Digitalight's agreement also contained a "Delivery" provision that provides, in relevant part, "(e) Seller reserves the right to make delivery in installments, unless otherwise expressly stipulated to the contrary in a written document signed by Seller. Delay in delivery of any installments shall not relieve Purchaser of its obligation to accept remaining deliveries."

{¶ 46} After reviewing the record, we find Digitalight's battle of the forms argument to be misplaced. Digitalight's agreement did not expressly indicate that

Cleveland Clinic's assent to the added terms set forth in the revised proposal — including Digitalight's agreement — was necessary in order to create a valid contract. Nor do the terms of Digitalight's agreement expressly state that Digitalight would be unwilling to proceed with the transaction unless Cleveland Clinic assented to the additional terms.

{¶ 47} Accordingly, the language in Digitalight's agreement did not make Digitalight's acceptance of Cleveland Clinic's offer conditional on the terms added in the revised proposal. Pursuant to R.C. 1302.10(A), the additional terms do not control the parties' contract. Rather, pursuant to R.C. 1302.10(B), the additional terms constituted proposed additions to the parties' contract.

{¶ 48} The additional terms in Digitalight's agreement did not become a part of the contract between Cleveland Clinic and Digitalight pursuant to R.C. 1302.10(B)(1). As noted above, Cleveland Clinic's offer expressly limited acceptance to the terms of the offer, including the Cleveland Clinic's terms and conditions that were incorporated therein.

{¶ 49} Because Digitalight's additional terms did not become a part of the parties' contract under either R.C. 1302.10(A) or (B), they are not controlling. Digitalight's reliance on the provision in its agreement permitting delivery in installments and delivery delays is misplaced and did not demonstrate the existence of a genuine issue of material fact that precluded summary judgment in Cleveland Clinic's favor.

{¶ 50} Cleveland Clinic's terms and conditions include a "Cancellation/Termination" provision that provides, "Buyer may terminate or cancel a [purchase order], in whole or in part, at any time upon written notice to Seller. Buyer will remain obligated for goods shipped or services performed by Seller prior to receipt of Buyer's notice." Here, after the masks were not delivered in a timely manner, Cleveland Clinic exercised this right to cancel the purchase order by providing written notice to Digitalight on April 15, 27, and 28, 2020.

{¶ 51} Finally, Digitalight argues, for the first time in this appeal, that Cleveland Clinic waived the timeliness issue. Digitalight did not raise its waiver argument in opposing Cleveland Clinic's motion for summary judgment in the trial court. It is well-established that a party cannot raise an argument for the first time on appeal. *See, e.g., Lycan v. Cleveland*, 2019-Ohio-3510, 142 N.E.3d 210, ¶ 32 (8th Dist.) ("arguments raised for the first time on appeal are generally barred and a reviewing court will not consider issues that the appellant failed to raise in the trial court").

{¶ 52} Nevertheless, we find no merit to Digitalight's waiver argument. Digitalight directs this court to an April 10, 2020 email from Pohlman to Haney in which Pohlman stated, "I will take smaller shipments of masks[.]" Digitalight assumes that Pohlman was referring to the 500,000 masks Cleveland Clinic originally offered to purchase from Digitalight, rather than the 6,000 masks Digitalight donated to Cleveland Clinic. In the same email, Pohlman states that Cleveland Clinic did not receive the 6,000 donated masks and that the 6,000 masks

were not part of the 500,000 mask order, but rather a "good faith shipment" Digitalight made "because of the now, *almost 2 week miss on your promised delivery date.*" (Emphasis added.)

{¶ 53} Digitalight breached the parties' agreement by failing to timely deliver the masks to Cleveland Clinic, and Cleveland Clinic exercised its right to cancel the purchase order before Digitalight shipped the masks to Cleveland Clinic. Accordingly, the trial court did not err in granting summary judgment in favor of Cleveland Clinic in this respect.

### c. Acceptance

{¶ 54} Third, Digitalight argues that a genuine issue of material fact exists regarding whether, after cancelling or attempting to cancel the purchase order, Cleveland Clinic accepted the masks.

{¶ 55} Digitalight contends that Cleveland Clinic accepted the first two shipments of masks, and as a result, the trial court erred in concluding that Cleveland Clinic cancelled the order. Digitalight concedes that Cleveland Clinic rejected the third shipment of approximately 409,000 masks. Assuming, arguendo, that Cleveland Clinic accepted the first shipment of 6,000 masks, the record reflects that these masks were donated by Digitalight and not part of the 500,000 mask order.

{¶ 56} Regarding the second shipment of approximately 85,000 masks, Digitalight directs this court to Section 2-606 of the UCC and R.C. 1302.64(A)(1), which provide,

(A) Acceptance of goods occurs when the buyer:

(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

{¶ 57} Cleveland Clinic acknowledges that it did, in fact, take possession of the second shipment of masks after (1) cancelling the purchase order, (2) instructing Digitalight not to ship the masks, and (3) advising Digitalight that Cleveland Clinic would not be paying for the masks if they were shipped.

{¶ 58} In his affidavit, Pohlman averred, in relevant part,

22. Despite Cleveland Clinic's several, written notifications of cancellation of the masks, Digitalight proceeded to ship a portion of the order over my objection. Digitalight broke the shipment down into two smaller shipments, which were delivered by two separate carriers on or about May 21, 2020. Cleveland Clinic was aware of one of the carriers, but not the other.

a. Cleveland Clinic rejected the [third] shipment delivered by the known carrier, which contained approx. 409,000 masks.

b. The [second] shipment delivered by the unknown carrier contained approx. 85,000 masks. That shipment was dropped off at Cleveland Clinic's docks with the carrier leaving before Cleveland Clinic could inspect and reject the shipment. The loading dock clerk did not know that he was signing for a shipment from Digitalight. Even if he did, the loading dock clerk did not have authority to accept a shipment from Digitalight. Had Cleveland Clinic been given the opportunity to inspect this shipment, or had Cleveland Clinic known what it was, it would have rejected and refused the shipment.

\* \* \*

24. \* \* \* The masks Digitalight shipped are sitting in a Cleveland Clinic warehouse and Digitalight is free to retrieve them.

{¶ 59} On May 19, 2020, Pohlman sent an email to Haney that provided, in relevant part, "I cancelled the [purchase order] for the mask shipment on April 27, 2020. If I receive these I will not be paying for them. Please do not ship them. Please confirm you received this e-mail." Pohlman's email was sent at 4:58 p.m. At 6:11 p.m., Haney forwarded Pohlman's email to another Digitalight representative, Andrea Merritt.

{¶ 60} The evidence submitted by Cleveland Clinic establishes that Cleveland Clinic did not "accept" the second shipment of masks pursuant to R.C. 1302.64(A)(1). Cleveland Clinic cancelled the purchase order before the masks were shipped. Cleveland Clinic rejected the masks before they were delivered. Cleveland Clinic took possession of the second shipment without having an opportunity to inspect the contents of the shipment. Finally, after discovering the contents of the shipment that Cleveland Clinic took possession of, Cleveland Clinic rejected the shipment and invited Digitalight to retrieve the masks from Cleveland Clinic's warehouse at any time.[5] Accordingly, the trial court did not err in granting summary judgment in favor of Cleveland Clinic in this respect.

---

[5] See exhibit No. 3a of Digitalight's motion for partial summary judgment.

**{¶ 61}** For all of the foregoing reasons, the trial court properly granted summary judgment in favor of Cleveland Clinic on Digitalight's breach-of-contract claim. Digitalight's first assignment of error is overruled.

### 3. Remaining Claims

**{¶ 62}** In its second assignment of error, Digitalight argues that the trial court erred in granting summary judgment in Cleveland Clinic's favor on Digitalight's claims for unjust enrichment, promissory estoppel, and action on an account.

### a. Unjust Enrichment

**{¶ 63}** First, regarding the unjust-enrichment claim, Digitalight argues that the trial court erred in holding that Digitalight was only entitled to recovery in accordance with the terms of the contract because the trial court "found a valid contract did not exist." Appellant's brief at 12. Digitalight's argument is misplaced and unsupported by the record.

**{¶ 64}** Contrary to Digitalight's assertion, the trial court did not conclude that a valid contract did not exist. Rather, the trial court concluded that Digitalight could not recover under a theory of unjust enrichment because "there is *a valid — albeit, canceled —* contract for the second and third shipments [of masks.]" (Emphasis added.)

**{¶ 65}** A claim for unjust enrichment, or quantum meruit, is an equitable claim based on a contract implied in law, or a quasi-contract. *See Hummel v. Hummel*, 133 Ohio St. 520, 525-528, 14 N.E.2d 923 (1938). "Where a valid contract

exists between the parties, there can be no recovery under a theory of quantum meruit in the absence of fraud, bad faith, or illegality." *Restivo v. Continental Airlines, Inc.*, 192 Ohio App.3d 64, 2011-Ohio-219, 947 N.E.2d 1287, ¶ 12 (8th Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989), and *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947), paragraph three of the syllabus. "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Padula v. Wagner*, 2015-Ohio-2374, 37 N.E.3d 799, ¶ 48 (9th Dist.), citing *Ullmann* at 475, 478-479, and paragraph four of the syllabus, and *Wochna v. Mancino*, 9th Dist. Medina No. 07CA0059-M, 2008-Ohio-996, ¶ 18.

{¶ 66} In the instant matter, Digitalight alleged in its complaint that Digitalight "conferred a benefit on [Cleveland Clinic] by ordering and shipping the masks," "[a]s [Cleveland Clinic] did not pay for these orders, it is unjust to permit [Cleveland Clinic] to retain the masks without making payment to [Digitalight]," and "[Digitalight] is entitled to damages as a result of [Cleveland Clinic's] unjust retention of the benefits conferred by [Digitalight]." Digitalight's complaint at ¶ 20, 22, and 23. There was an express, valid contract between Digitalight and Cleveland Clinic that covered the same subject — Digitalight ordering and shipping masks to Cleveland Clinic — that Cleveland Clinic cancelled after Digitalight failed to perform in a timely manner.

{¶ 67} Digitalight did not allege in its unjust-enrichment claim, much less demonstrate through Civ.R. 56, evidence, fraud, bad faith, or illegality on Cleveland

Clinic's behalf. As a result, Digitalight was not permitted to recover under an unjust enrichment or quantum meruit theory.

{¶ 68} The trial court properly granted summary judgment in favor of Cleveland Clinic on Digitalight's unjust-enrichment claim. Digitalight's second assignment of error is overruled in this respect.

### b. Promissory Estoppel

{¶ 69} Second, regarding the promissory-estoppel claim, Digitalight argues that the trial court erred in granting summary judgment in favor of Cleveland Clinic because the "trial court found the contract in question was invalid," and therefore, should have considered the alternative claim for promissory estoppel. As noted above, the trial court did not find that the contract was invalid. Rather, the trial court concluded that a valid contract existed and that Cleveland Clinic cancelled the contract.

{¶ 70} The existence of an express contract precludes a claim of an implied contract or promissory estoppel. *Pagano v. Case W. Res. Univ.*, 2021-Ohio-59, 166 N.E.3d 654, ¶ 78 (8th Dist.), citing *Manno v. St. Felicitas Elementary School*, 161 Ohio App.3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, ¶ 31 (8th Dist.), citing *Cuyahoga Cty. Hosps. v. Price*, 64 Ohio App.3d 410, 416, 581 N.E.2d 1125 (8th Dist.1989), and *Gallant v. Toledo Pub. Schools*, 84 Ohio App.3d 378, 616 N.E.2d 1156 (6th Dist.1992). Here, an express contract existed between Digitalight and Cleveland Clinic. Therefore, Digitalight's promissory-estoppel claim was barred.

{¶ 71} The trial court properly granted summary judgment in favor of Cleveland Clinic on Digitalight's promissory-estoppel claim. Digitalight's second assignment of error is overruled in this respect.

### c. Action on an Account

{¶ 72} Digitalight does not make a separate argument or present any argument or authority challenging the trial court's judgment in favor of Cleveland Clinic on Digitalight's claim for action on an account. *See* App.R. 16(A). Pursuant to App.R. 12(A)(2), this court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *Cleveland v. Taylor*, 8th Dist. Cuyahoga No. 109371, 2021-Ohio-584, ¶ 87, citing *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55.

{¶ 73} Nevertheless, the record reflects that the trial court properly granted Cleveland Clinic's motion for summary judgment on Digitalight's claim for action on account.

> An action on an account is not a separate claim but, rather, "a pleading device 'used to consolidate several claims which one party has against another.'" *Kwikcolor Sand v. Fairmount Minerals Ltd.*, 8th Dist. Cuyahoga No. 96717, 2011-Ohio-6646, ¶ 13, quoting *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29, 440 N.E.2d 600 (8th Dist.1981), paragraph one of the syllabus. An action on account "simplifies pleadings by allowing a party to advance, as one claim, claims for separate breaches of contract based on a series of transactions by providing a summary of accounting for the transactions." *Kwikcolor Sand* at ¶ 13.

*Garfield Estates, L.L.C. v. Whittington*, 2021-Ohio-211, 167 N.E.3d 113, ¶ 19 (8th Dist.).

{¶ 74} In the instant matter, Digitalight's claim for action on an account is really a claim for breach of contract. *Garfield Estates* at ¶ 19, citing *Schottenstein, Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 18. As noted above, the trial court properly granted summary judgment in favor of Cleveland Clinic on Digitalight's breach-of-contract claim.

{¶ 75} Accordingly, Digitalight's claim for action on an account fails, and Cleveland Clinic was entitled to judgment as a matter of law. Digitalight's second assignment of error is overruled in this respect.

{¶ 76} For all of the foregoing reasons, the trial court properly granted summary judgment in favor of Cleveland Clinic on Digitalight's claims for unjust enrichment, promissory estoppel, and action on an account.

## II. Conclusion

{¶ 77} After thoroughly reviewing the record, we affirm the trial court's judgment granting summary judgment in favor of Cleveland Clinic on Digitalight's claims for breach of contract, unjust enrichment, promissory estoppel, and action on an account.

{¶ 78} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

SEAN C. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR